A90A0058. REGENCY NISSAN, INC. v. TAYLOR.
(391 SE2d 467)

BIRDSONG, Judge.

Appellant, Regency Nissan, appeals from the judgment entered in favor of appellee William H. Taylor, Jr. Appellee brought suit for breach of warranty of title and for a violation of the Fair Business Practices Act (FBPA), OCGA § 10-1-390 et seq.

Appellee purchased a used pickup truck from appellant; the truck, a stolen vehicle, subsequently was confiscated by law enforcement authorities. Appellant denied actual knowledge that the automobile was stolen and asserted that, as an automobile dealer, it duly relied upon proof of ownership by matching the vehicle identification number (VIN) on the dashboard with the vehicle number on the cer-

tificate of title presented to it by another automobile dealer from whom it had purchased the vehicle. These numbers did match. However, the federal safety tag on the door was missing, the windshield VIN plate was not attached with Nissan rivets, and the confidential vehicle number and motor number (neither of which matched the VIN and vehicle identification number on the title) were not checked by appellant's employees.

The trial court "in essence" granted appellant's motion for directed verdict as to breach of warranty and elected not to instruct the jury concerning that claim. See generally OCGA § 11-2-607. The jury found against appellant as to appellee's FBPA claim. *Held*:

1. Appellee's motion to dismiss appeal on the grounds of appellant's late filing of appellate brief is denied.

2. Appellant asserts that the trial court erred in failing to grant its motion for directed verdict as to the FBPA claim, on grounds that the appellee had failed to establish that appellant committed an *intentional* act.

In support of this enumeration of error, appellant, citing *Gresham v. White Repair &c. Co.*, 158 Ga. App. 235, 236 (2) (279 SE2d 528), asserts that "[t]he FBPA does not apply where there is no volitional, unfair, or deceptive act." In *Gresham*, this court found that the provisions of Code Ann. § 106-1210 (b) (now OCGA § 10-1-399 (b)) were not applicable where plaintiff failed to present evidence in support of her FBPA claim "of a volitional unfair or deceptive act or practice." Suffice it to say that when used as technical legal terms the words "volitional" and "intentional" are not synonymous.

Conduct to be actionable under the FBPA must fall within that class of conduct made unlawful by OCGA § 10-1-393 (a), which proscribes unfair or deceptive acts or practices in trade or commerce. *Larson v. Tandy Corp.*, 187 Ga. App. 893, 896 (371 SE2d 663). The court must first determine that the particular activity occurred in the conduct of consumer transactions and consumer acts or practices before determining whether the acts or practices in issue are unfair or deceptive. Id.

The question of "volition" arises in regard to this first step. This court consistently has held that "to be subject to direct suit under the FBPA, the alleged offender must have done some *volitional act* to avail himself of the channels of consumer commerce. The allegedly offensive activity must have taken place 'in the conduct of . . . consumer acts or practices,' i.e., within the context of the consumer marketplace." (Emphasis supplied.) *State of Ga. v. Meredith Chevrolet*, 145 Ga. App. 8, 12 (244 SE2d 15); accord *Benchmark Carpet Mills v. Fiber Indus.*, 168 Ga. App. 932, 934 (311 SE2d 216); *Zeeman v. Black*, 156 Ga. App. 82, 83 (273 SE2d 910). "Offering a product for sale by opening one's door to the general public should trigger the prohibi-

tions of the act if some deceptive act or practice were involved. . . ." *Benchmark*, supra at 934. We find the transaction in this case did take place in the conduct of consumer acts or practices, i.e., within the context of the consumer marketplace. Compare *Burdakin v. Hub Motor Co.*, 183 Ga. App. 90 (357 SE2d 839) with *Paces Ferry Dodge v. Thomas*, 174 Ga. App. 642 (331 SE2d 4).

We must now determine whether appellant's conduct constituted unfair or deceptive acts or practices within the meaning of OCGA § 10-1-393 (a). Such conduct "would necessarily be attended by some [form of] reprehensible conduct on the part of the defendant." *Standish v. Hub Motor Co.*, 149 Ga. App. 365, 366 (254 SE2d 416). However, in assessing this issue, the FBPA is to be liberally construed and applied to promote its underlying purposes and policies, which are to protect consumers. OCGA § 10-1-391 (a).

A private FBPA claim has three essential elements: a violation of the act, causation and injury. *Nims v. Otter*, 188 Ga. App. 516 (2) (373 SE2d 396); *Zeeman*, supra at 86-87. The FBPA "abandons the two elements of the common law [tort of misrepresentation] most difficult to prove, scienter (knowledge of the deception) and intent to deceive." Wm. Rothschild, 10 Ga. Law Rev., A Guide to Georgia's Fair Business Practice Act of 1975, pp. 917, 926. However, a plaintiff who can show that the defendant committed an *intentional violation* is entitled to recover *treble* damages, so scienter and intent to deceive retain legal significance in FBPA litigation. 10 Ga. Law Rev., supra.

Moreover, OCGA § 10-1-391 (b) expressly states that "[i]t is the intent of the General Assembly that [the FBPA] be interpreted and construed *consistently* with interpretations given by the Federal Trade Commission in the federal courts pursuant to Section 5 (a) (1) of the Federal Trade Commission Act (15 USC Section 45 (a) (1)), as from time to time amended." In *Gimbel Bros. v. Fed. Trade Comm.*, 116 F2d 578 (4) (2nd Cir.), the court concluded: "It is in the public interest to prevent the sale of commodities by false and misleading statements. . . . [A] *deliberate effort to deceive is not necessary* to make out a case of 'using unfair methods of competition' within the prohibitions of [Section 5 of the Federal Trade Commission Act of 1914, 15 USC § 45]." (Emphasis supplied.) See generally 55 AmJur2d, Monopolies, § 741.

Accordingly, we conclude that establishment of unfair or deceptive acts or practices, within the meaning of the FBPA, does *not* require proof of an *intentional* conduct on the part of the defendant. Appellant's reliance on *Attaway v. Tom's Auto Sales*, 144 Ga. App. 813 (242 SE2d 740) is misplaced.

It is equally true, however, that mere negligence is not an element of an FBPA claim. But, consistent with the requirement for liberal construction and application of the FBPA (OCGA § 10-1-391

(a)), we find it would constitute an unfair business practice if, before merchandise is sold in the consumer marketplace, a seller is placed on *reasonable* notice that his claim of title to the merchandise could be legally defective and thereafter in blatant disregard of the rights of innocent purchasers fails to take *reasonable* measures to ascertain the true state of facts concerning title before consummating the sale. Compare *Paces Ferry Dodge*, supra at 643 ("there was evidence that the slightest attention on appellant's part, equivalent to knowledge, would have uncovered the defect") with *Gross v. Ideal Pool Corp.*, 181 Ga. App. 483, 485 (352 SE2d 806) (a misrepresentation presupposes knowledge of the falsity); see 87 CJS, Trademarks, § 228 b.

Except in plain and indisputable cases, the question of whether a particular act or omission, or a series thereof, constitutes unfair or deceptive acts or practices within the meaning of OCGA § 10-1-393 generally is for jury resolution. See *Credithrift of America v. Whitley*, 190 Ga. App. 833, 837 (1) (380 SE2d 489). Considering the posture of this record, which includes evidence that appellant's agent was timely contacted by a credit union office regarding the model number discrepancy on the vehicle VIN plate, we do not find this to be a plain or indisputable case. Construing the evidence to support the verdict and judgment, as we are required to do on appeal (*Locke v. Vonalt*, 189 Ga. App. 783 (1) (377 SE2d 696)), and applying the requisite standard for directed verdict (*Pendley v. Pendley*, 251 Ga. 30 (1) (302 SE2d 554)), we are satisfied that the trial court did not err in failing to grant appellant's motion for directed verdict.

3. Appellant asserts that the trial court erred in failing to rule at the inception of trial that its offer of compromise was reasonable or that it should be submitted to the jury, in failing to allow parol evidence to clarify an ambiguous offer of compromise, and in failing to limit damages in light of defendant's reasonable offer of compromise.

Pretermitting these issues, however, is the issue of whether appellant's oral offer constituted a "written tender of settlement" within the meaning of OCGA § 10-1-399 (b).

OCGA § 10-1-399 (b) is plain and unambiguous on its face. This statute expressly requires that the tender of settlement be in writing. When a statute is found to be plain and susceptible of but one natural and reasonable construction, an appellate court has no authority to place a different construction upon it, but must construe it according to its terms. *Ringewald v. Crawford W. Long Mem. Hosp.*, 258 Ga. 302, 303 (368 SE2d 490). We find that OCGA § 10-1-399 (b) speaks concisely in establishing the requirements for a "written tender of settlement"; it is so plain and unambiguous that judicial construction is both unnecessary and unauthorized, and the legislature's clear intent that the settlement offer be in writing will not be thwarted by invocation of the rule of "substantial compliance." Compare *Bible v.*

*Bible*, 259 Ga. 418 (383 SE2d 108); see also *Southern Guaranty Ins. Co. v. Goddard*, 259 Ga. 257, 258-259 (379 SE2d 778). We find appellant's offer did not meet the express statutory *threshold* requirement for a written tender of settlement, and accordingly, its assertions of error are without merit.

4. Appellant asserts that the trial court erred in incorporating the jury verdict into its order, as the verdict was excessive. Specifically, appellant asserts that a plaintiff can only recover "actual" damages where he is not entitled to treble damages under OCGA § 10-1-399; that the trial court found plaintiff entitled only to general damages and not to treble damages; that the FBPA limits the remainder of plaintiff's recovery to actual damages, not general damages; and, that the evidence of record does not establish actual damages in an amount sufficient to support the jury's award.

Appellee argues the FBPA does allow for the award of general damages; that according to OCGA § 51-12-2 (a) general damages may be recovered without proof of any amount; and, that the proper measure of general damages is limited only by the enlightened conscience of an impartial jury.

OCGA § 10-1-399 (a) pertinently provides that an FBPA cause of action can be brought "to recover . . . *general* and exemplary damages sustained as a consequence thereof . . . provided, however, exemplary damages shall be awarded only in cases of intentional violation." (Emphasis supplied.) Thus, it is clear that general damages can be recovered in an FBPA action (see generally Cobb & Eldridge, Ga. Law of Damages (2d ed.), § 29-5), and this interpretation is consistent with our conclusion in Division 1 that an FBPA violation need not be grounded on deliberate or intentional conduct in all instances.

This court, however, has consistently held that in accordance with the statutory requirements of the FBPA, the measure of damages to be applied for an FBPA violation is that of "actual injury suffered." *Givens v. Bourrie*, 190 Ga. App. 425 (1) (379 SE2d 223); *Standish v. Hub Motor Co.*, supra at 366. This holding is consistent with one of the stated purposes of the FBPA "to *limit* damages for injury caused by bona fide error." (Emphasis supplied.) Ga. L. 1975, p. 376. Thus, even an award for general damages under the FBPA is *limited* to those damages that can be measured by "actual injury suffered," and the general provisions of OCGA § 51-12-2 (a) are not applicable.

We find, as a matter of law, that the evidence of record in this case would not support an award of treble damages. We also find that appellee has failed to provide sufficient evidence from which the jury could determine that actual damage was suffered in the amount of $22,367.27 as awarded.

The trial record, nevertheless, does contain evidence of some "ac-

tual injury suffered" by appellee, notwithstanding his election at trial to decline to place a "dollar value" on the aggravation he had suffered as a result of the incident.

The judgment is affirmed on condition that appellee take judgment only as to such damages as the trial court finds from the posture of the trial record can be measured by actual injury suffered; otherwise reversed.

*Judgment affirmed on condition. Banke, P. J., and Cooper, J., concur.*

DECIDED FEBRUARY 23, 1990.

*Pamela M. Richards*, for appellant.
*Wayne C. Yancey*, for appellee.